UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CYNTHIA BROWN

VERSUS

JOHNSON & JOHNSON, INC. ET AL.

CIVIL ACTION

NO. 15-2308

SECTION "L"

## ORDER & REASONS

Before the Court is Plaintiff Cynthia Brown's Motion to Remand (R. Doc. 12).  Having considered the parties' briefs, the applicable law, and oral argument on the motion, the Court now issues this Order and Reasons.

I.     BACKGROUND

On May 15, 2015, the Plaintiff filed its original petition in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana against Johnson & Johnson ("Johnson"), DePuy Orthopaedics, Inc. ("DePuy"), and Mark Starring and Associates, Inc. ("Starring"), alleging damages arising from the implantation of a defective DePuy knee prosthesis and SmartSet GHV Bone Cement ("Bone Cement").  Starring was contracted as an independent medical device sales representative for Depuy.  This petition asserted state law claims against Starring including: (1) liability for acting as a "distributor" of DePuy products; (2) failure to warn; (3) redhibition; (4) breach of express or implied warranties; (5) intentional and negligent misrepresentation; (6) fraud; and (7) invasion of privacy.  The parties do not dispute that the Plaintiff and Defendant Starring are nondiverse litigants for federal jurisdiction purposes. Defendants argue, however, that the Plaintiff improperly joined Starring as a defendant because she has no arguable claims against Starring under Louisiana law.

## II.  LAW

### a.  **Motion to Remand**

Motions to remand are governed by 28 U.S.C. § 1447(c), which provides that "[i]f at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Cohen v. Safeco Ins. Co.,* No. 08–707, 2008 WL 1730537, at *1 (E.D.La. Apr. 9, 2008).  The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1408 (5th Cir.1995); *Jernigan v. Ashland Oil Inc.,* 989 F.2d 812, 815 (5th Cir.1993) (per curiam); *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988). To determine whether jurisdiction is present for removal, courts consider the claims in the state court petition as they existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 264 (5th Cir.1995). Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 339 (5th Cir.2000).

### b.  **Fraudulent Joinder**

"When original federal jurisdiction is based on diversity, however, a defendant may remove only 'if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action as brought.' " *Gasch v. Hartford Acc. & Indem. Co.,* 491 F.3d 278, 281 (5th Cir.2007)(citing 28 U.S.c. § 1441(b)). Where such a party is joined, the removing party may nevertheless seek to remove on the basis of diversity jurisdiction by demonstrating that the non-diverse party was improperly joined.  The removing party bears a heavy burden in demonstrating the fraudulent joinder of non-diverse defendants and must demonstrate that there is no possible way that the plaintiff would prevail against the non-diverse defendant in state court. *Ford v. Elsbury,* 32 F.3d 931, 935 (5th Cir.1994)(citing *B., Inc. v. Miller*

*Brewing Co.,* 663 F.2d 545 (5th Cir.1981)).  "To demonstrate improper joinder of resident defendants, the removing defendants must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Gasch,* 419 F.3d at 281. (internal quotation marks and citations omitted).  In determining whether plaintiffs have fraudulently joined a non-diverse defendant, the Court must construe all ambiguities in the controlling state law and all disputed questions of fact in favor of plaintiffs. *Id.* While the Court should not "pretry" the case, it may consider summary judgment type evidence. *Id.* Whether or not plaintiffs fraudulently joined the non-diverse defendant is based on an analysis of the causes of action alleged in the state court petition at the time of removal. *Tedder v. F.M.C. Corp.,* 590 F.2d 115, 116 (5th Cir.1979) (whether case properly removed is determined by reference to the allegations in plaintiff's state court pleadings).

## III.    ANALYSIS

The Plaintiff's breach of warranty, misrepresentation, fraud and invasion of privacy claims are meritless and the Plaintiff sets forth no argument in support of these claims.  Thus, the Court analyzes only the liability as distributor, failure to warn and redhibition claims.  For the reasons set forth below, there is no reasonable basis for predicting that liability could be imposed on Starring under any these claims and they are insufficient to defeat removal.

### a.   **Redhibition**

"[A redhibition] claim can only exist between a buyer and a seller and to be a seller under redhibition, the defendant must have had an *ownership interest* in the product.  *Ahrens v. TPLC, Inc.*, 955 F. Supp. 54, 58 (E.D. La. 1997)**;** *see also Duplechin v. Adams*, 665 So. 2d 80, 84 (La. App. 1 Cir. 11/9/1995)(rejecting redhibition claim against real estate agent defendant where no

evidence of ownership interest); *Ernestine v. Baker*, 515 So.2d 826, 828 (La. App. 5 Cir. 11/9/1987)(observing that redhibition action lies only where ownership is demonstrated).

In *Ahrens*, a products liability case involving cardiac pacemaker leads, the court addressed the viability of a redhibition claim against a sales representative in the context of improper joinder. 955 F.Supp. 54 (E.D.La. 1997). In denying the plaintiff's motion to remand, the *Ahrens* court held that there was no viable claim in redhibition against the medical device distributor because there was no evidence of ownership. *Id*. at 58 (holding that "Plaintiffs have made no allegations and have submitted no evidence that [the distributor] possessed an ownership interest in the leads. Accordingly, there is no possibility that plaintiffs can maintain a redhibitory action against [the distributor]"). The *Ahrens* case is similar to the instant matter. James Muller, a principal at Starring, declared that Starring never takes title to, or an ownership interest in the products at issue in this case. (R. Doc. 1-2). Starring does not invoice the providers, receive monies from the providers, or make warranties about the products. *Id.* The fact that Starring is the exclusive distributor of the products at issue is of no consequence. *See Ahrens*, 955 F. Supp. At 57-58 ("As the exclusive sales representative of [the manufacturer] for the leads, [the distributor] cannot be a seller under redhibition when it had no ownership interest in the leads.). Accordingly, as there is no evidence that Starring took an ownership interest in the product at issue, Plaintiff's redhibition claim must fail.

b. **Liability as Distributor and Failure to Warn**

Under Louisiana tort law, to establish the liability of a non-manufacturing seller of a product, "three requirements must be met: First, the product sold by [the seller] must be defective. Second, [the seller] must have had actual or constructive knowledge that the product it sold was defective. Lastly, [the seller] must have failed to declare the defect." *Ayala v. Enerco*

*Grp., Inc.*, 569 F. App'x 241, 245 (5th Cir. 2014) (quoting *Alexander v. Toyota Motor Sales, U.S.A.,* 123 So.3d 712, 714 (La.2013))."[U]nlike a manufacturer, a non-manufacturing seller of a product is not presumed to have knowledge of a product's vices, and it is not required to inspect the product it sells prior to sale to determine the possibility of any inherent vices or defects in the product." *Diaz v. Goodyear,* 2008 WL 4528186, at 6 (M.D.La.10/12/2008) (citations omitted). Further, "[b]ecause [a non-manufacturer seller] ha[s] no duty to inspect for such defects, it likewise ha[s] no duty to warn of hidden defects or to maintain/remedy such defects." *Id*. at *6. Thus, a non-manufacturer seller is not liable for damages in negligence unless it knew or should have known that the product sold was defective. *Id*. The seller must have had actual or constructive knowledge that the product it sold was defective. *Ayala*, 569 F. App'x at 245.

In support of her motion, the Plaintiff offers the following as evidence that Starring knew or should have known that the product sold was defective: (1) the opinion of Professor Gary Frazier, a professor of distribution management in the Marshal School of Business at the University of Southern California; and (2) the Sales Representative Agreement between Starring and Depuy/Johnson & Johnson. Professor Frazier states that, in his opinion, manufacturers of orthopedic devices, such as Depuy and Johnson, are responsible for providing information to their distributors regarding the safety risks of the medical devices they are distributing. In his declaration, Prof. Frazier also stated that he would expect that Depuy, based on the relationship between manufacturer and distributor, did provide information to Starring regarding the safety risk of its product and that Starring would have a special duty to provide accurate product information to medical providers and patients about the safety of the products it is distributing. However, this declaration (1) was used to no avail in another similar case against the same defendant (*Daniels v. Touro Infirmary*, No. CIV.A. 11-1586, 2011 WL 6140869 (E.D. La. Dec.

9, 2011) ; (2) has been attached to other medical device product liability actions and does not refer to the product at issue; and (3) was signed and dated nearly five years before the instant action was filed.  Thus, considering the foregoing, this affidavit is of no consequence in the context of this case.  The affidavit fails to establish that Starring had actual knowledge of the Bone Cement's alleged defective nature and "[m]ere *alleged* constructive knowledge is not enough to establish a negligence claim."  *Id.*  at *2 (emphasis added).

Additionally, the Plaintiff offers the Sales Representative Agreement, which states, in pertinent part, that Starring "will report to Company any and all complaints or other information regarding the Products received from any source, including without limitation, reports of adverse events involving Products." (R. Doc. 19-3 at 3).  Notwithstanding the foregoing, Plaintiff offers no evidence that any complaints regarding adverse events related to the Bone Cement were ever made or relayed to Starring.  Moreover, James Muller, a principal at Starring, testified to the following: (1) Starring plays no role in the design or manufacture of the knee prosthesis or Bone Cement; (2) Starring plays no role in the development or publishing of the package insert or marketing materials accompanying the product or disseminated to health care providers; (3) Starring's role in distribution of the products at issue is solely limited to delivery. (R. Doc. 1-2). Starring fills Crescent City Surgical Centre's ("Centre") or the surgeon's order by either retrieving the prosthesis from inventory maintained at a Starring facility or by ordering the prosthesis from Depuy and delivering it to the Centre upon receipt.  *Id.*  Starring neither inspects nor makes warranties regarding the prosthesis or Bone Cement.  *Id.* Given the lack of evidence presented by the Plaintiff and the declaration of Muller, the Sales Representative Agreement, like the affidavit by Dr. Frazier, fails to establish actual knowledge and merely alleges constructive

knowledge.  Accordingly, Plaintiff has no viable negligence or failure to warn claims against Starring.

**IV.     CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Plaintiff's Motion to Remand (R. Doc. 12) is DENIED.

New Orleans, Louisiana, this 14th day of October, 2015.

UNITED STATES DISTRICT JUDGE